===============================================================

In the

# United States Court of Appeals

### For the Fourth Circuit

HEATHER NICOLE DURHAM,

on behalf of herself and others similarly situated,

*Plaintiff – Appellee,*

v.

CITY OF CHARLOTTE,

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
NO. 3:21-CV-00638-RJC-DSC

_____

BRIEF OF APPELLEE

_____

J. David Stradley
WHITE & STRADLEY, PLLC
3105 Charles B. Root Wynd
Raleigh, NC 27612
(919) 844-0400
stradley@whiteandstradley.com

John F. Bloss
Frederick L. Berry
HIGGINS BENJAMIN, PLLC
301 N. Elm St., Ste. 800
Greensboro, NC 27401
(336) 273-1600
jbloss@greensborolaw.com
fberry@greensborolaw.com

Andrew H. Brown
BROWN, FAUCHER, PERALDO &
BENSON, PLLC
822 N. Elm Street, Suite 200
Greensboro, NC  27401
(336) 478-6000
drew@greensborolawcenter.com

*Counsel for Appellee*

===============================================================

# **Table of Contents**

Table of Cases and Authorities . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . 6

STATEMENT OF UNDISPUTED FACTS. . . . . . . . . 9

   A. CMPD's On-Site Publication of Its
      DMV-349s . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   B. Defendant's Unredacted DMV-349s Harvested
      in Bulk for Marketing Purposes . . . . . . . . . . . 11

   C. Defendant Publishes Plaintiff's Personal
      Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

   D. Defendant's Procedures for Preparing
      DMV-349s. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . 16

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

I. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . 17

II. DEFENDANT IS NOT A STATE AGENCY
    AND IS SUBJECT TO LIABLITY FOR
    DISCLOSING DPPA-PROTECTED PERSONAL
    INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . 18

   A. Federal Law Governs Interpretation of
      the DPPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B. The DPPA Itself Differentiates Between
State and Local Agencies . . . . . . . . . . . . . . . . 22

C. Defendant is Not and Cannot Be Liable
Under the DPPA Merely for "Completing"
DMV-349s . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D. Courts Interpreting the DPPA Agree that
Municipalities are "Persons" Under the Act . . 24

E. The *Gaston* Order Does Not Avail
Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

III.   DEFENDANT DISCLOSED PERSONAL
INFORMATION FROM "MOTOR VEHICLE
RECORDS" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

A. DMV-349s With Same Address Box Checked
"Yes" are DPPA Motor Vehicle Records . . . .  30

B. Confidential Materials Were Appropriately
Used By Plaintiff's IT Expert . . . . . . . . . . . . . 33

IV.    PLAINTIFF HAS STANDING TO MAINTAIN
THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . 40

CERTIFICATE OF FILING AND SERVICE . . . . . . . . 41

# TABLE OF CASES AND AUTHORITIES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Brooks v. Maryland Gen. Hosp.*,
996 F.2d 708 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . 20

*Butts v. Prince William Cnty. Sch. Bd.*,
844 F.3d 424 (4th Cir. 2016) . . . . . . . . . . . . . . . . . 38

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Davis v. Durham Mental Health Developmental
Disabilities Substance Abuse Area Auth.*,
320 F. Supp.2d 378 (M.D.N.C. 2004) . . . . . . . . . . 19

*Garey v. Farrin*,
35 F.4th 917 (4th Cir. 2022) . . . . . . . . . . . . . . . . 35, 37

*Gaston v. LexisNexis Risk Sols., Inc.*,
483 F. Supp.3d 318 (W.D.N.C. 2020) . . . . . . 5, 6, 28

*Henry v. Purnell*,
652 F.3d 524 (4th Cir. 2011) . . . . . . . . . . . . . . . . . 18

*Hensley v. City of Charlotte*,
2021 U.S. Dist. LEXIS 202756
(W.D.N.C. Oct. 21, 2021) . . . . . . . . . . . . . . . . . . . 6

*Hutchins v. United States DOL*,
683 F.3d 75 (4th Cir. 2012) . . . . . . . . . . . . . . . 21, 22

*Mallak v. City of Brainerd*,
2017 U.S. Dist. LEXIS 14974
(D. Minn. Feb. 2, 2017) . . . . . . . . . . . . . . . . . . . . . . 25

*Maracich v. Spears,*
     570 U.S. 48 (2013) . . . . . . . . . . . . . . . . . . . . . . . 4, 24

*Margan v. Niles,*
     250 F. Supp.2d 63, (N.D.N.Y. 2003) . . . . . . . . . . 27

*Meads v. Alfred,*
     1995 U.S. Dist. LEXIS 2442
     (E.D.N.C. Feb. 6, 1995) . . . . . . . . . . . . . . . . . . . . . 20

*Meyer v. Walls,*
     347 N.C. 97, 489 S.E.2d 880 (1997) . . . . . . . . . . . 19

*Miltier v. Beorn,*
     896 F.2d 848 (4th Cir. 1990). . . . . . . . . . . . . . . . . 18

*Miss. Band of Choctaw Indians v. Holyfield,*
     490 U.S. 30 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Moore v. City of Creedmoor,*
     345 N.C. 356, 481 S.E.2d 14 (1997) . . . . . . . . . . 19

*Orduno v. Pietrzak,*
     2017 U.S. Dist. LEXIS 160860
     (D. Minn. Sep. 29, 2017) . . . . . . . . . . . . . . . . . . . 26

*Peltier v. Charter Day Sch., Inc.,*
     8 F.4th 251 (4th Cir. 2021) . . . . . . . . . . . . . . . . . 17

*Potocnik v. Carlson,*
     2016 U.S. Dist. LEXIS 92497
     (D. Minn. July 15, 2016) . . . . . . . . . . . . . . . . . . . 26

*Reno v. Condon,*
     529 U.S. 141 (2000) . . . . . . . . . . . . . . . . . . . . 32, 33

*Russello v. United States,*
     464 U.S. 16 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Santarlas v. Minner,*
    2015 U.S. Dist. LEXIS 80617
    (M.D. Fla. June 22, 2015) . . . . . . . . . . . . . . . . . . . 25

*Schierts v. City of Brookfield,*
    868 F. Supp.2d 818 (E.D. Wis. 2012) . . . . . . . . . . 25

*Senne v. Vill. of Palatine, Ill.*
    695 F.3d 597 (7th Cir. 2012),
    *cert. denied,* 570 U.S. 917 (2013) . . . . . . . . . . . . 24

*Smith v. Hefner,*
    235 N.C. 1, 68 S.E.2d 783 (1952) . . . . . . . . . . . . . 19

*Thomas v. George, Hartz, Lundeen, Fulmer,*
*Johnstone, King, & Stevens, P.A.,*
    525 F.3d 1107 (11th Cir. 2016) . . . . . . . . . . . . . . . . 4

*Truesdell v. Thomas,*
    889 F.3d 719 (11th Cir. 2018) . . . . . . . . . . . . . . . 25

*United States ex rel. Vuyyuru v. Jadhav,*
    555 F.3d 337 (4th Cir. 2009) . . . . . . . . . . . . . . . . 37

*United States ex rel. Wilson v. Graham Cty.*
*Soil & Water Conservation Dist.,*
    2002 U.S. Dist. LEXIS 6038
    (W.D.N.C. Mar. 26, 2002) . . . . . . . . . . . . . . . . . . . 26

*Watts v. City of Hollywood,*
    146 F. Supp.3d 1254 (S.D. Fla. 2015) . . . . . . . . . 25


1 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. §§ 2721, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . 1, 5

18 U.S.C. § 2721(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

18 U.S.C. § 2721(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. § 2724 . . . . . . . . . . . . . . . . . . . . . . . 4, 29, 35

18 U.S.C. § 2724(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

18 U.S.C. § 2725 . . . . . . . . . . . . . . . . . . . . . . . . . 18, 30

18 U.S.C. § 2725(1) . . . . . . . . . . . . . . . . . . . . . . . . 5, 29

18 U.S.C. § 2725(3) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 39

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.C. Gen. Stat. § 132-6(a) . . . . . . . . . . . . . . . . . . . . . 33


Doug Bailey, "MAPFRE Insurance Faces
Lawsuit for Data Breach,"
    INSURANCE NEWSNET (Sept. 19, 2023) . . . . . . . . . . 10

Lee Matthews, "Hackers Stole Customers' License
Numbers From Geico In Months-Long Breach,"
    FORBES (Apr. 20, 2021) . . . . . . . . . . . . . . . . . . . 10

Scott Ikeda, "Geico Data Breach Leaks Driver's
License Numbers, Advises Customers to Watch
Out for Fraudulent Unemployment Claims,"
    CPO MAGAZINE (Apr. 23, 2021) . . . . . . . . . . . . . . . 10

# JURISDICTIONAL STATEMENT

The district court has federal question subject-matter jurisdiction over this matter under 28 U.S.C. § 1331 because Plaintiff's/Appellee's claim for relief arises under the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721, *et seq*., a federal statute.

This Court's jurisdiction over this interlocutory appeal is more problematic. Defendant appeals from the district court's Order entered September 24, 2024 (the "Order," JA 976) which (1) denied Defendant's motion to dismiss for lack of standing and for summary judgment; (2) granted Plaintiff's motion to certify the action as a class action; and (3) granted Plaintiff's motion for summary judgment. (JA 1018). Defendant's notice of appeal, however, specifies that its appeal challenges only the district court's denial of Defendant's motion for summary judgment (JA1019).

This Court, on November 4, 2024, denied Defendant's petition to appeal the district court's ruling certifying the action as a class action (Appeal No. 24-235, Dkt. 17), leaving open the possibility that Defendant could appeal the Order's ruling on class certification in the future. Moreover, Defendant does not seek review here of the district

—2—

court's award of summary judgment in favor of Plaintiff. As a result,

Defendant's appeal solely of the denial of its summary judgment motion

seemingly creates the possibility of piecemeal appeals of the September

24, 2024 Order.

Nevertheless, in its brief Defendant intimates (pp 2-4)—but does

not unequivocally state—that its appeal encompasses *all* of its

challenges to the matters determined in the September 24, 2024 Order

and as a result should be immediately appealable. It should be noted

that Defendant's only arguments in opposition to class certification

below are included in this appeal, to wit, that (1) Plaintiff lacks

standing (ECF 45 at 11); (2) Defendant is not a "person" for purposes of

the DPPA (*Id.* at 16); and (3) Plaintiff supposedly violated the protective

order in a prior case (*Id.* at 22).[1] Defendant's petition to this Court for

permission to appeal the class certification order raised only the merits

_____

[1] Indeed, the district court noted that in Defendant's opposition to
class certification, "Defendant reiterates its arguments . . . regarding
standing and maintains that it is not a 'person' subject to a private right
of action under DPPA. . . . Defendant does not challenge Plaintiff's
arguments on the specific factors required for class certification but
instead makes general objections to Plaintiff's evidence procured during
the *Hensley* litigation and analyzed by Plaintiff's expert in this case."
(JA1000).

arguments argued in this appeal, that Defendant is not a "person" under the DPPA, that accident reports are not "motor vehicle records" under the DPPA, and that Durham lacks standing. (No. 24-235 Dkt. 2). Finally, Defendant raised only legal issues, not factual ones, in opposition to Plaintiff's motion for summary judgment, so that resolution of this appeal should foreclose a future appeal of the district court's award of summary judgment to Plaintiff.

It would certainly be efficient for this Court to resolve all appealable issues at this juncture of the litigation, before the class and/or subclass members are ascertained[2] and class members mailed notices, given the opportunity to object, etc. However, unless this Court rules that the September 24, 2024 Order from which Defendant appeals is a "final decision" for purposes of 28 U.S.C. § 1291 from which no

---

[2] Identification of subclass members would be required only if certification of the main class is unresolved after this appeal. Identifying subclass members will require a transfer of CMPD's electronic crash report data from a third party, CentralSquare Technologies, so that Plaintiff's expert can analyze the metadata algorithmically to determine which reports were auto-populated with DMV data. (*See* JA979, JA1007, Def.'s Br. at 3). Plaintiff and CentralSquare have agreed in substance on the terms of a consent order to effectuate this transfer of data, if necessary, after this appeal has been resolved.

additional appeals may be taken, the Court lacks jurisdiction over this Court and therefore should dismiss the Defendant's appeal of the district court's Order so that the action may proceed to final judgment.

## INTRODUCTION

The DPPA concisely defines the cause of action upon which Plaintiffs maintain this action as follows:

> A person who [1] knowingly obtains, discloses or uses personal information, [2] from a motor vehicle record, [3] for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains[.]

18 U.S.C. § 2724(a). *See Maracich v. Spears*, 570 U.S. 48, 71 (2013); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.,* 525 F.3d 1107, 1111 (11th Cir. 2008).

Nevertheless, for many years before this action was filed, Charlotte-Mecklenburg Police Department ("CMPD"), an instrumentality of Defendant City of Charlotte (*see* JA12 ¶ 3; JA71 ¶ 3), made paper copies of its completed DMV-349 motor vehicle crash reports ("DMV-349s") available to the public in its records division. CMPD published these DMV-349s without redaction, knowing that the

personal information[3] in the reports would be used for marketing purposes, in violation of the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721, *et seq.* ("DPPA"). As discussed below, Plaintiff has pleaded and proven, and Defendant has admitted, that CMPD unlawfully published her statutorily protected private information[4] in the course of this practice.

Defendant argues that it is a State agency and therefore not a "person" subject to the federal act at issue in this case, disregarding the language of the statute, the mountain of DPPA cases against it on this issue, as well as irreconcilable jurisprudence from this Court. Instead, in the sole DPPA case upon which it relies for its argument, Defendant latches onto an out-of-context statement in an opinion of the court below, *Gaston v. LexisNexis Risk Sols., Inc.,* 483 F. Supp.3d 318, 348

---

[3] The DPPA defines "personal information" to include an individual's name, address, and driver identification number, 18 U.S.C. § 2725(3), and it defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," 18 U.S.C. 2725(1).

[4] DPPA-protected personal information includes the driver's name, address, phone number, and driver's license number. 18 U.S.C. § 2725(3).

(W.D.N.C. 2020) (the "Gaston Order")*,* to argue that Defendant is not a "person" as defined under the DPPA because it is a State agency and, therefore, is free to publish drivers' personal information to marketers and others. (Def.'s Br. at 11-21). To the contrary, the Gaston Order indicates that such an argument would be "nonsensical," 483 F. Supp.3d at 346, and plainly instructs that "to the extent that CMPD provides such records [DMV-349s] to the public without redacting that information or limiting disclosure only for those uses permitted by the DPPA then it is in violation of the statute." *Id*. at 347. The plain language of the DPPA, and the numerous cases construing it, leave no doubt that Defendant, when it discloses DPPA personal information to the public is a "person" subject to DPPA liability.

## STATEMENT OF THE CASE

After her motion to intervene in a similar DPPA action, *Hensley v. City of Charlotte,* No. 3:20-cv-482-KDB-DSC (W.D.N.C.), was denied, *see Hensley*, 2021 U.S. Dist. LEXIS 202756, at *9 (W.D.N.C. Oct. 21, 2021), Plaintiff-Appellee Heather Nicole Durham filed this action on November 30, 2021. Her Complaint (JA11) seeks injunctive and declaratory relief and statutory damages under the DPPA, on behalf of

herself and a proposed class of similarly situated persons whose personal information was harvested from Defendant and used for marketing purposes during the seven-month Class Period from November 30, 2017 through June 30, 2018. (JA30 ¶ 111).

On March 8, 2022, Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of standing and failure to state a claim. (JA47). By Order entered October 13, 2022, the district court, per the Honorable Robert J. Conrad, Jr., dismissed Plaintiff's claims for injunctive and declaratory relief but otherwise denied the motion to dismiss. (JA63).

After briefing and argument, Judge Conrad, on September 24, 2024, entered an Order (the "Order") (JA976) denying Defendant's motion for summary judgment, granting Plaintiff's motion for class certification, and granting Plaintiff's motion for summary judgment. The district court concluded that there were no material factual issues in dispute and that as a matter of law Defendant knowingly disclosed Plaintiff's and class members' "personal information" from a "motor vehicle record" for a purpose not permitted under the DPPA. (JA1010-JA1018).

The district court also determined that Rule 23's requirements for class certification were easily met. The court found that Rule 23's requirements of numerosity, commonality, typicality, and adequacy of representation (JA1001-JA1005) were all satisfied, and additionally found that questions of law or fact common to class members predominated over individual issues and that class treatment of the issues was superior to other available methods for fairly and efficiently adjudicating the controversy. (JA1005-JA1007). Finally, the court found that class members were readily ascertainable. (JA1007-JA1009). Defendant raised no argument below disputing any of these matters.

The class certified by the district court consists of all persons (1) who were listed as North Carolina-licensed drivers on DMV-349 crash reports completed by CMPD officers within the Class Period; (2) whose name appears on a Farrin Spreadsheet[5]; and (3) with respect to whom the Same Address Box for the person is checked "Yes" on the DMV-349. Also certified is a subclass consisting of all members of the above-

---

[5] *See* discussion *infra* at 12.

defined class whose personal information was auto-populated onto a DMV-349. (JA1009).

On October 8, 2024, Defendant filed in this Court a petition for permission to appeal the district court's class certification ruling pursuant to Fed. R. Civ. P. 23(f). (No. 24-235, Dkt. 2). This Court, on November 4, 2024, denied the petition. (JA1021).

Defendant, on October 24, 2024, filed a Notice of Appeal of the Order's denial of Defendant's motion for summary judgment. (JA1019). On December 19, 2024, Plaintiff filed, and the parties have fully briefed, a motion to dismiss this appeal. (Dkt. 14-1).

## STATEMENT OF UNDISPUTED FACTS

### A. CMPD's On-Site Publication of Its DMV-349s.

From 2007 or earlier and continuing through late 2020, CMPD placed paper copies of its completed DMV-349 crash reports on the front desk of its records division so that anyone who came into the division could personally view and, if desired, electronically scan or otherwise record the information on the DMV-349. (JA18-19 ¶¶ 48, 49, 52, 53; JA73-74 ¶¶ 48, 49, 52, 53; JA219-221; JA228-229). Every morning during this time frame, CMPD printed and made available at its

records desk all DMV-349s completed during the previous 24-hour period. (JA198-99).

The DMV-349s that CMPD made available to the public included the names, addresses, and driver's license numbers[6] of the persons involved in traffic accidents. (*See* JA18 ¶¶ 45- 47; JA73 ¶¶ 45-47). CMPD knew, since at least 2011, that marketers, including law firms that CMPD employees referred to as "ambulance chasers," were acquiring reports in bulk directly from its records division. (JA73 ¶ 52; ECF 32-6 pp 18:16–20:6). Nevertheless, CMPD redacted none of this personal information on the DMV-349s it made available to the public. (JA19 ¶ 53; JA74 ¶ 53. Nor did CMPD require any certification from a

---

[6] "Next to your Social Security number, your driver's license is one of the most important pieces to keep safe from thieves." Doug Bailey, "MAPFRE Insurance Faces Lawsuit for Data Breach," INSURANCE NEWSNET (Sept. 19, 2023). "Hackers harvest license numbers because they're a very valuable piece of personal information. A driver's license can be a critical part of a fraudulent, synthetic identity — which go for about $1200 on the Dark Web." Lee Matthews, "Hackers Stole Customers' License Numbers From Geico In Months-Long Breach," FORBES (Apr. 20, 2021). "With a driver's license number, bad actors can manufacture fake IDs, slotting in the number for any form that requires ID verification, or use the information to craft curated social engineering phishing attacks." Scott Ikeda, "Geico Data Breach Leaks Driver's License Numbers, Advises Customers to Watch Out for Fraudulent Unemployment Claims," CPO MAGAZINE (Apr. 23, 2021).

person wishing to view the reports as to the person's intended use for the information gleaned from the reports. (JA74 ¶ 56; JA229 129:1-9). CMPD maintained no records as to the persons who reviewed the accident reports (JA20¶ 57; JA74 ¶ 57), as the DPPA expressly requires. *See* 18 U.S.C. § 2721(c).

In August 2016, undersigned counsel Stradley sent Defendant a letter demanding Defendant cease and desist its publication of DMV-349s revealing individuals' DPPA personal information. (JA22 ¶ 62; JA39; JA74 ¶ 62). Despite receiving this letter and the notice it provided that Defendant was violating the DPPA, Defendant continued to make unredacted copies of DMV-349 reports freely available to the public until late 2020. (JA73 ¶ 52).

## B. Defendant's Unredacted DMV-349s Harvested in Bulk for Marketing Purposes.

A company known as Digital Solutions of the Carolinas procured during relevant times DMV-349s in bulk from CMPD's records division. Specifically, throughout the November 30, 2017 through June 30, 2018 Class Period, Digital Solutions regularly sent runners to retrieve CMPD accident reports. Throughout the Class Period, *these runners supplied Digital Solutions with all of its CMPD DMV-349s*. (JA473 ¶ 5).

Digital Solutions then sold copies of the CMPD accident reports to law firms and others, including James S. Farrin, P.C., d/b/a the Law Offices of James Scott Farrin ("Farrin"), for marketing purposes. (*Id.* ¶ 7; JA419 ¶ 5). *All of Farrin's CMPD DMV-349s during the Class Period were received from Digital Solutions*. (JA419 ¶ 5). Farrin harvested personal information from the DMV-349s he received from Digital Solutions, placed that information into internal spreadsheets, and used those spreadsheets to address direct-mail advertising to accident victims. (JA419-20 ¶¶ 7-8).

Farrin has produced its spreadsheets, consisting of the personal information of accident victims harvested from CMPD accident reports during the Class Period, to Plaintiff pursuant to subpoenas in this litigation. (JA420 ¶¶ 8-9; JA474-75). *Plaintiff's name and address appears in Farrin's spreadsheets of individuals to whom it intended to send marketing materials*. (JA 475 ¶ 4; JA419-20 ¶¶ 4-10).

## C. Defendant Publishes Plaintiff's Personal Information.

Plaintiff Durham was involved in a motor vehicle accident in Charlotte on December 4, 2017. (JA404 ¶ 3). At the scene of the crash, Plaintiff provided the investigating CMPD officer with her driver's

license. *Id.* The CMPD officer accessed the N.C. Division of Motor Vehicles ("NCDMV") driver's license database, where he could review information about Plaintiff, including her name, address on file with NCDMV, and driver's license number, all of which information he imported directly into the standard North Carolina "DMV-349" accident report that he prepared. (*See* JA405 ¶¶ 5, 6).

The DMV-349 ("Plaintiff's Report") prepared by the CMPD officer displayed Plaintiff's personal information as defined by the DPPA, *see* 18 U.S.C. § 2725(3), including her name, address, and driver's license number. (JA75 ¶ 67; *see* JA981). The metadata in the electronic version of Plaintiff's Report shows that CMPD auto-populated Plaintiff's name, address, and date of birth into the Report from the DMV database and that the officer made no changes to the auto-populated fields. (*See* JA984). The CMPD officer checked "Yes" in the "Same Address as Driver's License" box confirming that the address shown on the DMV-349 was the same address on Plaintiff's North Carolina driver's license. (JA45). Defendant then placed an unredacted copy of Plaintiff's Report on the counter in its records division, making it publicly available. (JA24 ¶¶ 76-77; JA75 ¶¶ 76-77).

As a result of Defendant's unlawful publications of the unredacted Plaintiff's Report, Plaintiff received numerous solicitation letters from lawyers seeking to represent her in pursuing a claim arising from the accident. (*See* JA406 ¶ 7; JA844-845).

**D. Defendant's Procedures for Preparing DMV-349s.**

North Carolina law requires that a law enforcement officer create a crash report using a standard DMV-349 form for each reportable motor vehicle accident. N.C. Gen. Stat.§§ 20-8(3), 20-4.01(33b). CMPD officers use software called ReportBeam, which is published by CentralSquare Technologies ("CentralSquare"), to create DMV-349s. (JA16 ¶ 34; JA73 ¶ 34; JA194). When officers use ReportBeam, they have the option to enter a driver's license number to search for a driver in North Carolina DMV's database. The officer can select the driver's information from the results returned from the DMV database and then press the F11 key. (JA112-JA113; JA117; JA210-JA212). The F11 key then copies the driver's information, including his name and address, into the DMV-349. *Id.* This is known as the "auto-populate" feature. *Id.* The ReportBeam software records the data for each CMPD DMV-349 in a database. (JA979). Using auto-populate for the DMV-349, means the

driver's name and address come from the DMV database. (ECF. 32-1 at 21:20–22:1, 25:4–10, 119:2–120:8; Doc. No. 32-4, JA353-JA354 ¶¶ 4–7). The presence of the "dataclip" associated with a particular report shows that the CMPD officer used the auto-populate feature to insert the driver's personal information taken from the DMV database into the accident report. (*See* JA979).

The standard DMV-349 form contains a check box for each driver in which the law enforcement officer indicates whether the driver's address on the DMV-349 matches the address on the driver's license ("the Same Address Box"). Each CMPD officer has, at all relevant times, been trained to check "Yes" for the Same Address Box on the DMV only if he or she has compared the address on the DMV-349 to either the driver's physical license or to the NCDMV database. Accordingly, if the Same Address Box is checked "Yes," the CMPD officer has compared the address on the DMV-349 either to the address shown on the driver's license or to the address in the DMV database. Thus, where the Same Address Box is checked "Yes," the DMV-349 necessarily includes information from a driver's motor vehicle record, namely the driver's

address on the driver's license and in the DMV database. (JA6 ¶¶ 37-40).

## SUMMARY OF ARGUMENT

A municipal government such as Defendant is not a state agency and is therefore a "person" for purposes of the DPPA. Federal, not state law, governs the interpretation of the DPPA, including its definition of "person," and it is beyond cavil that under federal law municipal governments like Defendant are "persons" as defined by the DPPA. The fact that Defendant may have an obligation under state law to complete DMV-349 crash reports—a function that is excepted from the scope of the DPPA—does not protect Defendant from liability for knowingly disclosing DPPA protected personal information.

The district court correctly determined that DMV-349s with Same Address Boxes checked "Yes" are DPPA motor vehicle records as a matter of law, and that as a result Defendant's public disclosure of the personal information of the class members violated the DPPA. Defendant's apparent contention that it should have been granted summary judgment as to the subclass, whose personal information was auto-populated into the crash reports from DMV data, as a result of a

supposed violation of a protective order in a prior case is utterly without merit.

Finally, the undisputed evidence leaves no possibility but that Defendant provided Plaintiff's DPPA-protected personal information to marketers in violation of the Act, and as a result Plaintiff has standing to prosecute this action. And even if there were some question about the thoroughness of the summary judgment evidence on this subject (and there is not), Defendant has expressly admitted this fact in its Answer.

## <u>ARGUMENT</u>

## I.    STANDARD OF REVIEW.

This Court's review of a district court's grant or denial of summary judgment is *de novo. Peltier v. Charter Day Sch., Inc.,* 8 F.4th 251, 260 n.4 (4th Cir. 2021). Summary judgment is merited only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing its entitlement to summary judgment, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986), and the Court must draw all reasonable

inferences "in the light most favorable to the nonmoving party," *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).

The Court reviews *de novo* a district court's decision to deny a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction when the underlying facts are not in dispute, as is the case here. *Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 517 (4th Cir. 2000).

A district court's denial of a request for sanctions is reviewed for an abuse of discretion. *Miltier v. Beorn*, 896 F.2d 848, 855 (4th Cir. 1990).

## II. DEFENDANT IS NOT A STATE AGENCY AND IS SUBJECT TO LIABILITY FOR DISCLOSING DPPA-PROTECTED PERSONAL INFORMATION.

The DPPA defines a "person" as follows:

> **(2)** "person" means an individual, organization or entity, but does not include a State or agency thereof[.]

18 U.S.C.S. § 2725. Defendant claims that in disseminating DMV-349s to the public it acts as a State agency and, accordingly, is not a "person" as defined by the DPPA. ECF 39-1 pp. 17-25. (Def.'s Br. at 11-21). As a result, CMPD continues, a civil action against it under the DPPA is precluded, and summary judgment should have been entered in its favor. *Id.*

Defendant is mistaken, as established below.

## A. *Federal Law Governs Interpretation of the DPPA.*

Defendant first suggests that because local governments are in some situations considered state agencies under North Carolina law, Defendant should be deemed an agency of the State for purposes of the DPPA. (Def.'s Br. at 12). However, while the treatment of municipalities and their instrumentalities as state agencies *under state law* depends on the context of the dispute,[7] the DPPA is a federal statute and,

———————————

[7] *Compare, e.g., Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952) ("[A] subordinate division of the state, or agency exercising statutory governmental functions like a city administrative school unit, may be sued only when and as authorized by statute" (citations omitted)) *with, e.g., Moore v. City of Creedmoor*, 345 N.C. 356, 359, 367, 481 S.E.2d 14, 17 (1997) ("Although a municipal government is a creation of the State, it does not have the immunity granted to the State and its agencies. . . . [W]e find that the City of Creedmoor, as a municipality, may be sued under section 1983"); *Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp.2d 378, 398 (M.D.N.C. 2004) ("North Carolina caselaw also treats area authorities as local, regional entities that are distinct from the State and its agencies. . . . Although North Carolina courts sometimes describe area authorities as 'state agencies' in judicial opinions, the courts tend to treat area authorities as regional entities that are more like counties or municipalities than state agencies" (citations omitted)); *Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) ("An action against a commission or board created by statute as an agency of the State *where the interest or rights of the State are*

therefore, federal law controls its interpretation. *See, e.g.*, *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 43-44 (1989) ("[I]n the absence of a plain indication to the contrary, Congress when it enacts a statute is not making the application of the federal act dependent on state law. One reason for this rule of construction is that federal statutes are generally intended to have uniform nationwide application. Accordingly, the cases in which we have found that Congress intended a state-law definition of a statutory term have often been those where uniformity clearly was not intended." (cleaned up; citations omitted)); *Brooks v. Maryland Gen. Hosp.*, 996 F.2d 708, 714 (4th Cir. 1993) ("[T]he elements of, and the defenses to, a federal cause of action are defined by federal law….While the federal courts may give effect to state law in interpreting the scope of a federal statute if Congress has evinced an intention to give state law persuasive or binding effect,...even when a

---

*directly affected is in fact an action against the State*…. Likewise, an action against a county agency *which directly affects the rights of the county* is in fact an action against the county" (emphasis added; citation omitted)); *Meads v. Alfred*, 1995 U.S. Dist. LEXIS 2442, *5 (E.D.N.C. Feb. 6, 1995) ("The defendant is a police officer of a local government. The Eleventh Amendment applies to a state or its agencies. The defendant is not a state actor. He is an agent of a municipality, which is a government entity independent of the state government").

federal statutory provision contains significant gaps, the courts have been reluctant to infer such intent and resort to reference to state law due to concern for uniformity in the nation's law." (citations, quotations omitted)).

Indeed, "person" is defined in the federal Dictionary Act, 1 U.S.C. § 1, the definitions of which apply "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise." *Id.* In *Hutchins v. United States DOL*, 683 F.3d 75, 77-78 (4th Cir. 2012), this Court relied on the Dictionary Act definition to determine that a municipality was a "person" for purposes of the Federal Employees' Compensation Act, as follows:

> [I]n the Dictionary Act, Congress provided definitions for a number of common statutory terms that courts are to apply "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise." 1 U.S.C. § 1. The Dictionary Act defines the term "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *Id.*\* The term "corporation," in turn, encompasses a "municipal corporation," that is, a "city, town, or other local political entity formed by charter from the state and having the autonomous authority to administer the state's local affairs." BLACK'S LAW DICTIONARY 341-43, 1037 (7th ed. 1999). Further, Supreme Court precedent also indicates that the term "person" encompasses municipal corporations unless a more limited use is indicated by

context. *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 687-89 (1978).

*Hutchins v. United States DOL*, 683 F.3d 75, 77-78 (4th Cir. 2012).

Here, as discussed further below, the context of the DPPA indicates no intention of a more limited use of the definition of "person"; indeed, it is clear from the context of the Act that Congress intended DPPA "persons" to include municipalities.

> **1.** ***The DPPA Itself Differentiates Between State and Local Agencies.***

The DPPA, in several places, lists federal, state, and local agencies as *separate categories* of governmental entities. For example, the DPPA's list of permissible uses includes the following:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a *Federal, State, or local agency* in carrying out its functions.
>
> * * *
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any *Federal, State, or local* court or *agency* or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

18 U.S.C. § 2721(b)(1), (b)(4) (emphasis added).

"[Where] Congress includes particular language [here, "local agency"] in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States, 464 U.S. 16, 23* (1983) (citation, quotation omitted). Here, it is apparent that when Congress intended a provision of the DPPA to apply to municipalities, it expressly so provided.

### 2. *Defendant is Not and Cannot Be Liable Under the DPPA Merely for "Completing" DMV-349s.*

Defendant contends that because it is required by state law to *complete* DMV-349 crash reports (Def.'s Br. at 11, 13, 14, 15), and because *completing* DMV-349s promotes the State's public policies (*Id.* at 11-13), it should be considered a state agency and accordingly not a DPPA "person." Of course, this action is about publicly *disclosing* protected personal information, not completing crash reports—a function which most assuredly does not subject Defendant to DPPA liability. Indeed, the DPPA expressly includes 14 permissible uses of DPPA personal information including "use by any government agency,

including any court or law enforcement agency, in carrying out its

functions." 18 U.S.C. § 2721(b)(1).[8]

### 3. *Courts Interpreting the DPPA Agree that Municipalities are "Persons" Under the Act.*

The courts agree that a municipality, in disclosing DPPA-

protected personal information, does not act as a "State or agency

---

[8] Defendant has not and cannot reasonably argue that public *disclosure* of driver's personal information in accident reports constitutes a permissible law enforcement use under the § 2721(b)(1) exception. Indeed, the Supreme Court directs lower courts to interpret the DPPA's exceptions narrowly so as not to "undermine in a substantial way the DPPA's purpose of protecting an individual's right to privacy in his or her motor vehicle records." *Maracich v. Spears*, 570 U.S. 48, 60-61 (2013). Thus, to qualify under one of the DPPA's exceptions, the *disclosure* of personal information must *itself* further the purpose of the exception. *Senne v. Vill. of Palatine, Ill.,* 695 F.3d 597, 606 (7th Cir. 2012) (*en banc*), *cert denied* 570 U.S. 917 (2013). It is not enough that the disclosure have some tangential relationship to a governmental purpose. *See id.*

Amicus' argument (not raised by Defendant here or in the district court below) that CMPD's disclosure of drivers' DPPA personal information was expressly authorized by Section 2721(b)(1) because CMPD was "carrying out its function," *see* Amicus Br. 15, if accepted, would expand the definition of conduct that qualifies as a law enforcement agency's "functions" so broadly as to render the DPPA without effect as to personal information obtained by *any* LEA. Stated differently, amicus' interpretation would provide absolute discretion and immunity to all LEAs such that LEAs would be permitted to redisclose personal information for any reason or no reason at all. The exception would effectively swallow the rule.

thereof" for purposes of the DPPA, and is a "person" as defined by the Act. *See, e.g., Truesdell v. Thomas*, 889 F.3d 719, 724 (11th Cir. 2018) ("The Act defines 'person' as 'an individual, organization or entity, but does not include a State or agency thereof.' This definition does not exclude municipal agencies such as sheriff's departments" (quoting 18 U.S.C. § 2725(2)); *Mallak v. City of Brainerd,* 2017 U.S. Dist. LEXIS 14974, at *41-42 (D. Minn. Feb. 2, 2017) ("The DPPA's definition of 'person' includes 'an individual, organization or entity, but does not include a State or agency thereof.' … The … County Defendants are thus 'persons' under the DPPA"); *Santarlas v. Minner*, 2015 U.S. Dist. LEXIS 80617, at *8 (M.D. Fla. June 22, 2015) ("Although a state and its agencies, such as a department of motor vehicles, are exempt from the civil penalties provided for under the DPPA, cities and municipalities are not"); *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1260 (S.D. Fla. 2015) ("The [DPPA's] statutory definition of 'person' has a carve-out for states and their agencies, but the definition is otherwise broad enough to cover municipalities"); *Schierts v. City of Brookfield,* 868 F. Supp.2d 818, 822 (E.D. Wis. 2012) ("[M]unicipalities are vicariously liable under the DPPA to the same extent as any other defendant"). *See*

*generally United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.,* 2002 U.S. Dist. LEXIS 6038, at *30 (W.D.N.C. Mar. 26, 2002) ("By 1863, when the [False Claims Act] was enacted, it is clear that Congress knew (or should have known) that a municipality or a political body less than a sovereign state was a person. . . . With the exception of a few growing pains, a municipality is no less a 'person' today than it was in 1986, 1863, or 1844").

Defendant cites three opinions holding municipal governments liable for DPPA violations under vicarious liability principles and contends that those cases somehow support its argument that it is not a "person" for DPPA purposes. (Def.'s Br. at 15-18). Defendant fails to acknowledge, however, that each of those cases expressly determined that a municipal government is a DPPA "person." *See Orduno v. Pietrzak*, 2017 U.S. Dist. LEXIS 160860, at *24 (D. Minn. Sep. 29, 2017) (in light of the DPPA's definition of "person" in § 2725(2), "the language of the statute contemplates direct liability for municipal entities like the City"); *Potocnik v. Carlson*, 2016 U.S. Dist. LEXIS 92497, *23, 2016 WL 3919950 (D. Minn. July 15, 2016) ("[A]lthough Congress specifically exempted states and state agencies from the definition of "person"

under the DPPA, *Congress conspicuously did not exempt municipalities*"
(citing 18 U.S.C. § 2725(2); emphasis added); *Margan v. Niles*, 250 F.
Supp.2d 63, 75, 75 n.15 (N.D.N.Y. 2003) ("[P]ursuant to 18 U.S.C. §
2724(a), states and state agencies are expressly exempted from
civil liability under the DPPA. *Municipalities are not.…*Congress's
decision not to exclude municipalities evinces its intention to put
municipalities on the same footing as all other persons" (emphasis
added; citing 18 U.S.C. §§ 2724(a), 2725(2)).

### 4. *The Gaston Order Does Not Avail Defendant.*

Defendant urges that the district court in the Gaston Order
concluded that for purposes of the DPPA, . . . "a subordinate division of
the state like a city administrative unit is a state agency." (Def.'s Br. at
13 (quoting Gaston Order, 483 F. Supp.3d at 348 n.25)). Defendant's
reliance on the Gaston Order for its argument that it is not a "person"
under the DPPA, and, accordingly, exempt from the remedies set out in
Section 2724 of the DPPA for disclosing drivers' personal information, is
misplaced.

In making its argument, Defendant continues to overlook a critical
distinction articulated in the Gaston Order. (*See* JA998). The court

emphasized in the Gaston Order that a municipality may be considered
a State agency for DPPA purposes only to the extent it acts within the
scope of its governmental authority:

> Similarly, any failure by a state or state agency, including
> a DMV or *city acting within the scope of its governmental
> authority*, is not subject to a private right of action
> under section 2724(a) because a "State or agency thereof"
> is not defined as a "person" under the DPPA, although they
> are plainly subject to the DPPA's disclosure restrictions
> described in section 2721(a) and subject to a potential civil
> penalty under 18 U.S.C. § 2723.

483 F. Supp.3d at 350 n.29 (emphasis added).

And, the court instructed, disclosing DPPA personal information
without a permissible purpose is *not* an action taken within the scope of
an agency's governmental authority:

> To be clear, the *gathering* of personal information
> to *prepare* the Crash Reports is a government function
> permitted by section 2721(b)(1) in the same way that
> gathering personal information to create a driver's license
> or motor vehicle registration is permitted by the act.
> However, once the information is lawfully obtained, the
> disclosure of the information, in and of itself, is not an
> independent governmental function that is permitted by
> the DPPA (absent redaction or a separate permitted use).

483 F. Supp.3d at 346 n.20 (italics emphasis in original; underscore
emphasis added). *See also id.* at 336 ("Simply put, the very essence of
the DPPA is to limit the disclosure of information that had previously

been made widely available as a public record; so, with due respect to Defendants' argument, *it would be nonsensical to hold that a permissible governmental 'function' under the DPPA is to publicly disclose personal information in a 'public record'"* (emphasis added)).

Indeed, any doubts about whether the district court in the Gaston Order intended that CMPD, in disseminating unredacted DMV-349s to the public, should be deemed to act in the capacity of a State agency exempt from DPPA's § 2724 remedies would seem to be foreclosed by the court's statement that "to the extent that CMPD provides such records to the public without redacting that information or limiting disclosure only for those uses permitted by the DPPA then it is in violation of the statute." *Id.* at 347.

## III. DEFENDANT DISCLOSED PERSONAL INFORMATION FROM "MOTOR VEHICLE RECORDS."

To be protected by the DPPA, personal information must come "from a motor vehicle record." 18 U.S.C. § 2724(a). The Act defines a "motor vehicle record" as

> any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles.

18 U.S.C. § 2725(1).

## A. DMV-349s With Same Address Box Checked "Yes" are DPPA Motor Vehicle Records.

Defendant disputes the "from a motor vehicle record" element with respect to the main class only, not the subclass. As to the main class (persons identified as drivers on CMPD crash reports completed in the Class Period, whose names appear on a Farrin Spreadsheet, and as to whom the Same Address Box for the person is checked "Yes" on the report), Defendant objected in the court below on the ground that it "disagree[d] with Plaintiff's characterization of a DMV-349 crash report as a 'motor vehicle record' under the DPPA" (ECF 52 at 7), without elaboration. As for the subclass of persons whose personal information was auto-populated into the crash reports, however, Defendant did not dispute below (nor does it here) that the source of those persons' DMV-349 personal information was "from a motor vehicle record."

Defendant's argument as to the main class is without merit. The Plaintiff's and class members' accident reports meet the definition of a motor vehicle record under 18 U.S.C. § 2725 because those reports "pertain[ ] to a motor vehicle operator's permit." *Id.* These accident reports show the box checked "Yes" for the "Same Address on Driver's

License?" question found on the form. (*See, e.g.,* JA45). When a CMPD officer checks the box to indicate that the address on the accident report is the same as the address on the driver's license, it means that the officer has compared the driver's current address to either her license or a DMV database. (JA186-JA188).

The plain text of the DPPA defines a "motor vehicle record" as "record that pertains to a motor vehicle operator's permit." 18 U.S.C. § 2725(1). Because the DMV-349 here indicates that Plaintiff's and class members' addresses on the report are the same as the address on their drivers' licenses, the reports "pertain[] to [their] motor vehicle operator's permit[s]." Indeed, the *Gaston* court held that "DMV Form 349 Crash Reports in which the box 'Same address as driver's license' is checked are 'motor vehicle records' under the statutory definition so no further individual assessment of the 'source' of the personal information is required." *Gaston*, 483 F. Supp.3d at 336. The court determined that the CMPD accident reports were "motor vehicle records" under the DPPA and enjoined the defendant from releasing unredacted accident reports without having a good faith belief that the report was being

disclosed for a specific purpose permitted by the DPPA. *Id.* at 336, 350-352.

Thus, when Defendant publicly disclosed and disseminated copies of unredacted accident reports with the Same Address As Driver's License box checked "Yes", it disclosed class members' personal information "from a motor vehicle record" as a matter of law.[9]

---

[9] The argument advanced by NCPA as amicus to the effect that the district court "converted the DPPA from a custodian-specific regulatory scheme into an information-specific regulation scheme," (Amicus Brief at 7) was not raised below and is not appropriately considered on appeal. In any event, the argument is meritless. In *Reno v. Condon*, in upholding the constitutionality of the DPPA, the Supreme Court recognized that the DPPA applies to the protected information, regardless of the custodian, so long as it was supplied by the State DMV:

> [T]he DPPA is generally applicable. *The DPPA regulates the universe of entities that participate as suppliers to the market* for motor vehicle information—*the States as initial suppliers* of the information in interstate commerce and private resellers or rediscloser of that information in commerce.

528 U.S. 141, 151 (2000) (emphasis added). Defendant acknowledges this direct link requirement in its brief. *See* Def.'s Br. 23. Thus, the DPPA regulates state DMVs as well as *all* recipients of the information between the DMV and the targeted market recipients. Disclosure of information obtained directly from the DMV by CMPD officers via use of the auto-populate F-11 function is a fact material to the outcome of this case which NCPA fails to address and, that such disclosure "could

## B. Confidential Materials Were Appropriately Used by Plaintiff's IT Expert.

Defendant urges that the district court should have "set aside"

evidence reviewed by Plaintiff's IT expert, Sankar Selvaraj, because

Plaintiff "bl[e]w off" a protective order relating to such data and

Selvaraj "had no right to access" the data. (Def.'s Br. at 26-27).

Defendant seems to suggest that as a result, summary judgment should

have been entered in its favor against the subclass of persons whose

personal information was auto-populated from DMV data. This

---

result in an inappropriate disclosure of restricted information from secure law enforcement information systems" was a risk known to CMPD. (JA978-979). CMPD publicly disclosed DPPA personal information it obtained directly from the DMV at its own peril.

Likewise, amicus' reliance on N.C. Gen. Stat. § 132-6(a), providing that "[e]very custodian of public records shall permit any record in the custodian's custody to be inspected and examined at reasonable times[,]" *see* Amicus Br. at 6, n.2, is misplaced insofar as a different section of the same statute also provides:

If it is necessary to separate confidential from nonconfidential information in order to permit the inspection, examination, or copying of the public records, the public agency shall bear the cost of such separation.

N.C. Gen. Stat. § 132-6(c). The Supreme Court in *Condon* recognized the DPPA "will require time and effort on the part of state employees[,]" *Reno v. Condon*, 528 U.S. at 150, which here would include separating public from nonpublic information.

argument is apparently an extension of Defendant's mistaken contention below that the *Hensley* Court "ordered plaintiff's counsel to destroy the confidential 2020 third-party database upon the conclusion of the 2020 case or to return it to the City's non-party Vendor." (ECF 45 pp. 23-24). However, no such language appears in the *Hensley* protective order. (*See* ECF 45-3).

At this point in the litigation, Defendant should be aware that these contentions lack all substance. In the *Hensley* litigation, after executing an agreement to be bound by the protective order entered in that case, Selvaraj analyzed CMPD electronic crash reports from September 1, 2017 through December 31, 2017, which included plaintiff Hensley's and proposed intervenor Durham's crash reports, and concluded that personal information in Hensley's and Durham's reports had been auto-populated. (*See Hensley* ECF 47-8 ¶ 2(c), 3(d)). After this action was filed by Durham, Selvaraj again executed an agreement to be bound by the protective order in this case (*see Durham v. City of Charlotte*, No. 3:23-mc-00181 (W.D.N.C.), Decl. of S. Selvaraj, ECF 21-1), which protective order by its terms expressly "supplements" the *Hensley* protective order and includes within its scope confidential

materials produced by third parties in *Hensley*. (JA82 ¶ 2). Selvaraj

then provided a declaration in this case relating to the auto-population

of Durham's report. (JA967). The district court below correctly rejected

Defendant's suggestion that this evidence should be excluded, finding

that because "the parties expressly contemplated use of materials

procured in litigating *Hensley* in the case at bar, . . . . use of those

materials cannot be said to violate the protective order in *Hensley*."

(JA1008). The court's analysis was sound in all respects, and its refusal

to exclude evidence plainly did not constitute any abuse of discretion.

*See Miltier*, *supra.*

## IV. PLAINTIFF HAS STANDING TO MAINTAIN THIS ACTION.

The DPPA protects the privacy of personal information contained

in motor vehicle records. Specifically, "A person who knowingly obtains,

discloses or uses personal information, from a motor vehicle record, for

a purpose not permitted under this chapter shall be liable to the

individual to whom the information pertains, who may bring a civil

action in a United States district court." 18 U.S.C. § 2724. In *Garey v.

Farrin*, 35 F.4th 917 (4th Cir. 2022), this Court determined that

because a violation of the DPPA is "'closely related to the invasion of

privacy, which has long provided a basis for recovery at common law,'" a violation of the DPPA, without more, constitutes "a legally cognizable privacy injury" conferring Article III standing. 35 F.4th 917 (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)).

Defendant does not take issue with *Garey*'s conclusion as to DPPA statutory standing, but instead makes the strange argument that Plaintiff has not adequately shown that Defendant disclosed her DPPA-protected personal information. (Def.'s Br. at 28-30). To the contrary, not only does the undisputed evidence prove that Defendant unlawfully disclosed Plaintiff's DPPA-protected information, but Defendant has admitted this fact, both as to Plaintiff and the putative class.

Undisputed evidence adduced in discovery establishes that:

(1) Plaintiff's DPPA-protected personal information appears in the Farrin firm's spreadsheets of targets to whom it directed marketing materials (JA475 ¶ 4; JA419-420 ¶¶ 4-10);

(2) Farrin's sole source of information relating to persons involved in CMPD-investigated wrecks during the Class Period were the crash reports that the firm received from Digital Solutions (JA419 ¶ 5); and

(3) Digital Solutions obtained all of its CMPD wreck information during the Class Period from copies of crash reports that its runners picked up at the CMPD records desk (JA473 ¶ 5).[10]

Thus, there is no other possibility but that Defendant unlawfully disclosed Plaintiff's CMPD crash report containing her DPPA personal information to Digital Solutions. Plaintiff's evidence not only establishes this fact by a preponderance of the evidence, *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009), but unequivocally.[11]

But Defendant's contention that Plaintiff cannot prove that CMPD disclosed her DPPA personal information fails for a more fundamental reason: Defendant concedes in its pleadings that it disclosed such information. Defendant admits, in its Answer, the following facts: On

___

[10] Digital Solutions, in turn, sold Plaintiff's and class members' personal information to Farrin, which used the information to mail them marketing materials. (JA475 ¶ 4; JA419-420 ¶¶ 4-10; JA473 ¶ 5).

[11] Indeed, the summary judgment evidence establishes that Defendant unlawfully disclosed CMPD crash reports containing the DPPA-protected personal information of *all class members* during the Class Period. (JA198-JA199 106-107; JA473 ¶ 5; JA475 ¶ 4; JA419-420 ¶¶ 4-10. Each such disclosure in violation of the DPPA, in and of itself, constitutes "a legally cognizable privacy injury." *Garey v. Farrin, supra.*

December 4, 2017, the CMPD officer who investigated Plaintiff's wreck completed a DMV-349 containing Plaintiff's full name, address, date of birth, driver license number, and telephone number (JA23 ¶ 67; JA75 ¶ 67)—all of which information is "personal information" as defined by the DPPA, *see* 18 U.S.C. § 2725(3). Defendant placed a copy of this crash report on the counter in its records division, thereby making the report available to the general public. (JA24 ¶¶ 76-77; JA75 ¶¶ 76-77). At no time has Defendant redacted personal information as defined by the DPPA from any DMV-349 made publicly available at the CMPD records division. (JA19 ¶ 53; JA74 ¶ 53).

Hence Defendant admits that it published Plaintiff's unredacted crash report, which contains DPPA-protected personal information, at its records desk. And "a party is bound by the admissions of his or her pleadings." *Butts v. Prince William Cnty. Sch. Bd.*, 844 F.3d 424, 432 n.3 (4th Cir. 2016) (cleaned up; citations omitted). *See also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 470 n.6 (2013) (defendant "remains bound" by admission in its answer).

## CONCLUSION

For the reasons set forth above, the Court should dismiss the Defendant's appeal unless it determines that the Order is a "final decision" for purposes of 28 U.S.C. § 1291 from which no further appeals may be taken, and if it makes such a determination, affirm the district court's Order in all respects.

Respectfully submitted, this the 29th day of January, 2025.

**/s/ John F. Bloss**
N.C. State Bar No. 23947
jbloss@greensborolaw.com
Frederick L. Berry
N.C. State Bar No. 9696
fberry@greensborolaw.com
HIGGINS BENJAMIN, PLLC
301 North Elm Street, Suite 800
Greensboro, North Carolina 27401
Telephone:(336) 273-1600

Andrew H. Brown
N.C. Bar No. 28450
BROWN, FAUCHER, PERALDO & BENSON, PLLC
822 N. Elm Street, Suite 200
Greensboro, NC 27401
(336) 478-6000
drew@greensborolawcenter.com

**/s/ J. David Stradley**
N.C. State Bar No. 22340
stradley@whiteandstradley.com
WHITE & STRADLEY, PLLC
3105 Charles B. Root Wynd
Raleigh, North Carolina 27612
Telephone: (919) 844-0400

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[X]     this brief contains <u>8004</u> words.

[  ]    this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.      This brief complies with the typeface and type style requirements because:

[X]     this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2016*] in [*14 pt Century Schoolbook*]; or

[  ]    this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

This the 29th day of January, 2025.

HIGGINS BENJAMIN, PLLC          */s/ John F. Bloss*
301 North Elm Street, Ste. 800       (NC Bar #23947)
Greensboro, NC  27401
Telephone: 336-273-1600
Facsimile:  336-274-4650
fberry@greensborolaw.com
jbloss@greensborolaw.com

*Attorney for Plaintiff-Appellee*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 29th day of January, 2025, I caused this Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such fling to the following registered CM/ECF users:

Patrick H. Flanagan, Esq.
Stephanie H. Webster, Esq.
Steven A. Bader, Esq.
*Counsel for Defendant/Appellant*

This the 29th day of January, 2025.

**/s/ John F. Bloss**
*Attorney for Plaintiff-Appellee*